**UNITED STATES of America,**
**Petitioner,**

v.

**Grover C. WILLIS, Jr., Respondent.**

**Civ. A. No. 542.**

United States District Court
M. D. Georgia, Columbus Division.

Jan. 26, 1955.

Joseph H. Davis, Asst. U. S. Atty., Macon, Ga., for petitioner.

Grover C. Willis, Jr., Columbus, Ga., for respondent.

BOOTLE, District Judge.

The claim of protection under the Fifth Amendment comes belatedly in this case. It is not asserted until in the written brief filed January 14, 1955, after the hearings of December 20 and December 28, 1954, and after the records were delivered into Court on the latter date.

The right of a lawyer not to disclose the confidential communications of his clients and the right against self-incrimination are different rights. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423.

The facts here in this regard are as they were in United States v. Johnson, D.C., 76 F.Supp. 538, 540, where the Court said:

"At the hearing before the judge he did not clearly indicate that he was standing upon a right against self-incrimination, but indicated he was standing upon the right of a lawyer not to disclose the confidential communications of his clients. In any event, he did turn the books and papers over after the hearing before the judge and did not pursue any other remedy."

The law as stated by the Court in United States v. Johnson, supra, is applicable here:

"The privilege against self-incrimination is neither accorded to the passive resistant nor the person who is ignorant of his rights, nor to one indifferent thereto. It is a fighting clause. Its benefits can be retained only by sustained combat. It cannot be claimed by attorney or so-

licitor. It is valid only when insisted upon by a belligerent claimant in person. * * * The one who is persuaded by honeyed words or moral suasion to testify or produce documents rather than make a last ditch stand, simply loses the protection. Once he testifies as to part, he has waived his right and must on cross examination or otherwise, testify as to the whole transaction. He must refuse to answer or produce, and test the matter in contempt proceedings, or by habeas corpus."

■ The claim asserted by Mr. Willis at both hearings is not against incrimination of his client under the Fifth Amendment but is an assertion of the right not to disclose privileged or confidential communications between client and attorney. That claim is untenable. The Supreme Court so decided in Grant v. United States, supra [227 U.S. 74, 33 S.Ct. 192], stating concisely, "These were independent documents. Even if they had been received by Grant as attorney for purposes of consultation, they could not be regarded as privileged communications."

The recent case of Falsone v. United States, 5 Cir., 205 F.2d 734, 739, is also conclusive and controlling on this point:

"The books and papers of a taxpayer, even though received by an attorney for purposes of consultation, cannot be regarded as privileged communications. (Footnote 9, supra). Grant v. United States, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L. Ed. 423; 58 Am.Jur., Witnesses, Sec. 501. According to the last cited text, 'The reason is obvious; the administration of justice could easily be defeated if a party and his counsel could, by transferring from the one to the other important papers required as evidence in a cause, thereby prevent the court from compelling the production of important papers on a trial.' Or, as more succinctly stated, 'If documents are not privileged while in the hands of a party, he does not make them privileged by merely handing them to his counsel.'

Edison Electric Light Co. v. United States Electric Lighting Co., C.C. N.Y., 44 F. 294, 297; Id., 45 F. 55. It seems clear, therefore, that, even if we should consider the relation between a taxpayer and his certified public accountant as confidential as that between client and attorney, the accountant would, nevertheless, be required to produce the books and records of the taxpayer."

The Supreme Court in the case of Rogers v. United States, 340 U.S. 367, 71 S. Ct. 438, 440, 95 L.Ed. 344, 345, stated:

"If petitioner desired the protection of the privilege against self-incrimination, she was required to claim it. United States v. Monia, 1943, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376, [379]. The privilege 'is deemed waived unless invoked.' United States v. Murdock, 1931, 284 U.S. 141, 148, 52 S.Ct. 63, 64, 76 L.Ed. 210, [212] [82 A.L.R. 1376]. Furthermore, the decisions of this Court are explicit in holding that the privilege against self-incrimination 'is solely for the benefit of the witness,' and 'is purely a personal privilege of the witness.' Petitioner expressly placed her original declination to answer on an untenable ground, since a refusal to answer cannot be justified by a desire to protect others from punishment, much less to protect another from interrogation by a grand jury. Petitioner's claim of the privilege against self-incrimination was pure afterthought. Although the claim was made at the time of her second refusal to answer in the presence of the court, it came only after she had voluntarily testified to her status as an officer of the Communist Party of Denver. To uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony."

This Court may assume, as did the Court in Falsone v. United States, supra, that since the client is not a party, the

agent or accountant (the attorney here) may claim in behalf of a client the privilege not to disclose a confidential communication, and the Court holds here, as the Court held there, that the records do not constitute confidential communications.

This Court is more reluctant to assume that the attorney, where the client is not a party, may claim in the latter's behalf his privilege under the Fifth Amendment against self-incrimination. Under the authorities, that would seem to be a decision which the client should and must be permitted to make for himself. The attorney may not know whether the evidence would tend to incriminate. Certainly he does not know that as well as the client. Sometimes in criminal matters clients do not inform counsel fully. In this case, for instance, the client is absent and the attorney perhaps has not had an opportunity to discuss with him this particular proceeding and represents him concerning the matters involved in this particular matter apparently only by virtue of a general power of attorney to handle matters that might immediately arise.

The Supreme Court in Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 377, 50 L.Ed. 652, 663, stated it this way:

> "The right of a person under the Fifth Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person."

■ It is more reasonable to assume that the attorney can, in a case where the client is not a party, claim for the client the privilege against disclosing a confidential communication between the two because there the attorney was a party to the communication and knows all about it. Not necessarily so as to the matter of what will or will not incriminate the client.

A further difficulty in allowing the attorney or any agent to make for his client

or principal the claim of privilege against self-incrimination lies in the fact that "The mere assertion of privilege does not immunize him; the Court must determine whether his refusal is justified and may 'require him to answer if "it clearly appears to the court that he is mistaken"' in his refusal. Hoffman v. United States, supra, 341 U.S. [479] at page 486, 71 S.Ct. [814] at page 818 [95 L.Ed. 1118]." In re Friedman, D.C., 104 F. Supp. 419, 421.

When we are dealing not with communications as to which the attorney has full knowledge but with the broad field of self-incrimination, the attorney speaking for an absent client with whom he probably has been unable to communicate can hardly be presumed to be well enough informed either to decide for the client whether the client would, if present, elect to claim the privilege or to support the claim when made.

■ But even if we were to rule that the attorney can make for his client the claim of privilege against self-incrimination under the Fifth Amendment, such claim in this case would not prevail. As was pointed out in the Falsone case, supra, 26 U.S.C.A. § 54(a) requires the taxpayer to keep records and the Commissioner, for the purpose of ascertaining the correctness of any return, is authorized by any officer or employee of the Bureau to examine the taxpayer's books and records and to require the attendance of the person rendering the return and the taking of his testimony, 26 U.S. C.A. § 3614. The Falsone case points out further that statutes granting such authorities have been held constitutional as against the contentions that they provide for unreasonable searches and seizures and compel the taxpayer to be a witness against himself.

Section 54(a) of Title 26 of the United States Code Annotated seems to relate to income taxes and records pertaining thereto. Many if not all of the records delivered into Court in this case would be relevant and pertinent to a determination of income tax liability. Some of these records relate also to wagers. Section

3285 of Title 26 of the United States Code Annotated imposes a 10 per cent excise tax on wagers, and Section 3287 of said title requires the keeping of a daily record showing the gross amount of all wagers. Thus it appears that the records involved are records which the law requires to be kept.

The Supreme Court has spelled out the non-privileged status of records validly required by law to be kept. In Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 544, 55 L.Ed. 771, 779, the Court says:

"But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege. * * * The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained."

The Wilson case was cited approvingly in Davis v. United States, 328 U.S. 582, 589, 66 S.Ct. 1256, 90 L.Ed. 1453, 1458, and in Shapiro v. United States, 335 U.S. 1, 17, 68 S.Ct. 1375, 92 L.Ed. 1787, 1798.

The documents here involved being pertinent to ascertaining the correctness of income tax returns and to a correct determination of the special stamp tax liability and also to a determination of the 10 per cent excise tax on wagering activities, they are subject to examination by the Secretary or his delegates, Section 7602, Internal Revenue Code of 1954, 26 U.S.C.A. § 7602, and it matters not whether the special agent seeking the privilege of examination is interested primarily in the stamp tax liability or the excise tax liability or the income tax liability or equally in the three. The records are "required records" and are subject to examination.

As above indicated, the claim under the Fifth Amendment was not timely. It is asserted for the first time in the brief of January 14, 1955, where on page 10, for instance, it is said that the documents in question "might tend to incriminate the said client," and on page 12, "and, by their nature, would tend to incriminate the owner with regard to crimes made chargeable by federal law." This is a belated assertion of the claim after the hearings were held on December 20 and on December 28. At the hearing of December 20, the claim was as to the confidential character of communications between client and attorney, and then the claim was not insisted upon, the reliance being rather upon the alleged inability to produce the documents. At the hearing of December 28, the records were produced and again the only privilege asserted was such as grew out of the relationship between client and attorney. Moreover, when the claim of privilege under the Fifth Amendment was asserted in the brief on January 14, 1955, the records had already been produced into Court subject only to a determination by the Court of the validity of the claims previously asserted; namely, the claims of privilege by virtue of confidential communications between client and attorney.

Moreover, the claim was not insisted upon as the law requires. As the Court stated in United States v. Johnson, supra [76 F.Supp. 540], "The one who is persuaded by honeyed words or moral suasion to testify or produce documents rather than make a last ditch stand simply loses the protection. * * * He must refuse to answer or produce, and test the matter in contempt proceedings, or by habeas corpus."

Whereupon, it is ordered that Julian K. Davis, Special Agent, Internal Revenue Service, and/or such other persons as may be properly authorized under the

terms of Section 7602 of the Internal Revenue Code of 1954, be and they are hereby authorized to receive from the Clerk of this Court at the time hereinafter specified all of said documents heretofore delivered into this Court by the respondent in the above stated case, giving to the Clerk a receipt therefor, and they may retain said documents for a period of 30 days after receiving the same, during which 30-day period they may inspect, examine, copy, photograph, or otherwise make reproduction of the same; provided, however, they shall preserve all of said documents and, after the expiration of such 30-day period, deliver them to the respondent, Grover C. Willis, Jr., taking his receipt therefor. The Clerk shall not release the documents in accordance with this order until after the expiration of a period of 10 days from the date hereof but shall release them at any time thereafter upon seasonable request of the persons by this order entitled to receive the same. The Court retains jurisdiction of this matter for the purpose of entering any further order or orders which in its judgment may become necessary or appropriate in order to implement the terms and provisions hereof and to permit the said inspection, examination, and copying.