**UNITED STATES of America, Plaintiff,**

v.

**T. Vincent QUINN, Martin Schwaeber and James D. Saver, Defendants.**

United States District Court
S. D. New York.

April 26, 1955.

J. Edward Lumbard, U. S. Atty., New York City, Leon Silverman, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Corcoran & Kostelanetz, Millard & Greene, Boris Kostelanetz, Myron J. Greene, Arthur Karger, Francis J. Mulderig, New York City, of counsel, for defendants.

BICKS, District Judge.

The defendants are charged in two indictments with having violated Title 18 U.S.C.A. § 281[1]. It is charged that they were copartners in the practice of their profession as lawyers and that one of them, a member of Congress, received his aliquot share of the net fees collected by the firm, including those

---

1. 18 U.S.C.A. § 281 in pertinent part provides:

"Whoever, being a Member of * * * Congress * * * directly or indirectly receives or agrees to receive, any compensation for any services rendered * * either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, * .* * shall be fined * * * or imprisoned * * *."

for services to clients in matters in which the United States was a party, or directly or indirectly interested.

The present application is for an order declaring unreasonable, illegal, and void an alleged search and seizure, directing the return of all evidence obtained by means thereof, suppressing all such evidence, restraining the Government from using any such evidence or any information obtained therefrom, and directing that a hearing be held "for the determination of issues of fact arising out of this motion".

■ Defendants allege that in October 1951 two agents of the Bureau of Internal Revenue called upon the defendant Schwaeber and, after appropriately identifying themselves as revenue agents, stated that the object of their visit was to conduct an income tax investigation of the defendant and his partners and for that purpose desired to review their books and records for the years 1947 through 1950. Two months later one of the revenue agents called on the defendant Quinn, informed him to like effect, and requested that he make his personal books and records available for examination. At about the same time a similar request was made of the defendant Saver. The requests of the revenue agents were assented to without protest or objection. The income tax liabilities of the defendants for the years under review were in due course adjusted and the tax cases closed. About six months later followed the indictments.

It is to be noted that the defendants voluntarily permitted the revenue agents to examine their books and records and there is no intimation that their consent was induced by fraud or trickery or that force or the threat of force was employed. Under the circumstances I find that there was no unconstitutional search and seizure.[2]

Defendants urge as an additional ground for suppression that agents of the Treasury Department, in violation of law[3], disclosed to the Department of Justice certain of the information they had gathered upon the examination of the defendants' books and records. This charge finds no support in the moving papers other than the bare allegation that each defendant is "informed and verily believes that this evidence and information obtained by the Treasury Agents, was unlawfully received by the Department of Justice".

I do not stop to inquire whether such a mere *ipse dixit* would constitute a sufficient showing of facts to warrant a pre-trial hearing. We are met at the threshold by Rule 41(e) of the Rules of Criminal Procedure, 18 U.S.C.A. which codifies existing law and practice (with one exception not here relevant)[4] and is the sole statutory authority for pre-trial suppression of evidence in a criminal case. The rule provides that "a person aggrieved by an unlawful search and seizure may move the district court * * * for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face,

---

2. Zap v. United States, 1946, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477; Nicola v. United States, 3 Cir., 1934, 72 F.2d 780; Stillman v. United States, 9 Cir., 1949, 177 F.2d 607; United States v. Arnold's Pharmacy, Inc., D.C.N.J., 1953, 116 F. Supp. 310. See also Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, 387.

3. 26 U.S.C.A. § 55(f)(1), Internal Revenue Code; 18 U.S.C.A. § 1905; the former makes it unlawful for any federal officer or employee to divulge or make known information appearing in an income return except as provided by law, the latter makes it a crime for any federal officer or employee to divulge or disclose any information coming to him in the course of his employment or by reason of official investigation relating to, inter alia, the identity, amount or source of any income except as authorized by law.

4. See notes of Advisory Committee on Rules.

or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. * * *" Important to observe is that the Rule is limited to evidence obtained by means of unlawful search and seizure.

Rule 41(e) was considered by the Court of Appeals for this circuit in In re Fried [5], a case referred to as the first really thorough judicial inquiry into the advisability of pre-trial motions in criminal cases [6]. The question there presented was whether the defendant was entitled to an order in advance of indictment interdicting the use of a confession procured in violation of the Fifth Amendment. Each of the three judges took a different view of the case. Judge Frank was of the opinion that all evidence obtained by means of an infraction either of the Constitution or of a statute regulating the federal police should be suppressed before trial. Judge Learned Hand felt that the force of consistency compelled him to extend the rule of pre-trial suppression of evidence obtained by a search in violation of the Fourth Amendment to confessions procured in violation of the Fifth Amendment. He stated that this extension was an innovation he was content to accept "Since I cannot see any rational basis here for distinguishing between the two Amendments when the situation is so nearly the same, * * *. Nevertheless, I wish strictly to confine it to the violation of a constitutional right; and to accept it only because of the higher respect in which these are traditionally held." 161 F.2d 453, 465. (Emphasis added.) Judge Augustus N. Hand, dissenting, thought it unwise in the absence of a statutory requirement, to extend the remedy of pre-trial suppression. "I am confident", he wrote, "that it will multiply dilatory motions and impede prosecuting officers without, except in rare instances, affording defendants any relief not available at the trial", and continuing, "I would not extend the remedy allowed in case of unlawful searches to confessions for the sake of consistency because the practical objections outweigh the advantages of a certain logical consistency, * * *." Id., 161 F.2d at page 466. Thus, the majority holding [7] extended the remedy of pre-indictment suppression to an unconstitutionally procured confession [8].

Defendants would have the court adopt the views expressed by Judge Frank in his partial dissent, disregard the views of Judge Augustus N. Hand, and narrowly interpret Judge Learned Hand's opinion to mean that only confessions procured in violation of a prompt committal statute are not subject to pre-trial suppression. Judge Learned Hand, the defendants urge, did not intend to

5. D.C.S.D.N.Y., 1946, 68 F.Supp. 961, reversed in part, 2 Cir., 1947, 161 F.2d 453, 1 A.L.R.2d 996, certiorari granted as to this issue sub nom. United States v. Fried, 1947, 331 U.S. 804, 67 S.Ct. 1755, 91 L.Ed. 1826, writ dismissed on motion of counsel for the petitioner, 1947, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384.

6. See note in 60 Harvard Law Review, pp. 1145, 1148.

7. Judge Frank wrote:
"Judge Learned Hand would suppress any of the confessions shown to have resulted from constitutional violations; to that extent he and I agree; such, therefore, is the decision of this court." 161 F.2d 453, 460.

8. The Court of Appeals for the First Circuit in Centracchio v. Garrity, 1952, 198 F.2d 382 intimated disagreement with the extension of the scope of Rule 41(e) implicit in the Fried decision: "We are not required in the present case to express any opinion as to the correctness of this decision, and we merely note that it is not sanctioned by the terms of Rule 41(e). The Fried case, even if correctly decided, is no authority for appellant in the present case, for here it is clear that there has been no coerced confession by petitioner in violation of his constitutional right." 198 F.2d at page 387.

exclude from the area of pre-trial suppression, evidence otherwise illegally obtained.

In my view the opinions of the Judges Hand unmistakably reflect an unwillingness to extend Rule 41(e) beyond evidence obtained by means other than invasion of a defendant's constitutional rights; indeed Judge Learned Hand reluctantly felt impelled to extend the rule to evidence obtained in violation of the Fifth Amendment, and Judge Augustus N. Hand refused to extend the rule beyond evidence obtained by an unlawful search and seizure.

The authority of decisions of the Supreme Court and the respect in which they are held are attempted to be employed as subtle coercion for adopting the view of the Fried case for which the defendants contend. Not to do so, they suggest would be tantamount to holding that Fried overruled Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. The simple answer is that Fried was decided by a court which had a peculiar familiarity[9] with Nardone and that in none of the three opinions was Nardone mentioned or cited. The contentions of the defendants reflect their failure or unwillingness to recognize that Fried and Nardone are not in conflict or in *pari materia*. The issue in the Nardone case was the admissibility of evidence procured through leads obtained in violation of the Federal wire tap statute[10] and the right of the defendant to examine witnesses on that issue at the trial[11].

The holding of Nardone is but a logical development of the almost universal repugnance against unlawful wire tapping. The Supreme Court has expressed itself on the subject thus: "Inconsistent with ethical standards and destructive of personal liberty"[12]; "it has been the view of many that the practice involves a grave wrong"[13]; "that decision [Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314] was not the product of a merely meticulous reading of technical language. It was the translation into practicality of broad considerations of morality and public well-being"[14].

Wire tapping and search and seizure, though perhaps different in manner of execution, are so closely similar in their effect upon invasion of the privacy of the individual as to fall as far as possible under the condemnations of and restrictions upon the latter. That, for purposes of pre-trial suppression of evidence, wire tap cases are sui generis can be discerned from Goldstein v. United States, 1942, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312, where, citing Nardone the Supreme Court said: "Although the unlawful interception of a telephone communication does not amount to a search or seizure prohibited by the Fourth Amendment, we have applied the same policy in respect of the prohibitions of the Federal Communications Act * *." 316 U.S. at page 120, 62 S.Ct. at page 1003. The case-made rule applicable to pre-trial suppression of unlawful wire

---

9. Judges Learned and Augustus N. Hand participated in the decision of that case in the Circuit Court of Appeals.

10. Federal Communications Act, 47 U.S. C.A. § 605.

11. "* * * 'the main question'" is "'whether the (trial) judge improperly refused to allow the accused to examine the prosecution as to the uses to which it had put the information' [obtained by wire tap]".
    "The issue thus tendered by the Circuit Court of Appeals is the broad one,

whether or no § 605 merely interdicts the introduction into evidence in a federal trial of intercepted telephone conversations, leaving the prosecution free to make every other use of the proscribed evidence". 308 U.S. 338, 339, 60 S.Ct. 266, 267.

12. Nardone v. United States, 302 U.S. 379, 383, 58 S.Ct. 275, 277, 82 L.Ed. 314.

13. Id., 302 U.S. at page 384, 58 S.Ct. at page 277.

14. Nardone v. United States, 308 U.S. 338, 340, 60 S.Ct. 266, 267, 84 L.Ed. 307.

346

tap evidence [15] has not been extended, as far as any case that has come to the attention of the court is concerned, to evidence otherwise illegally obtained.

Absent statutory provision [16] or other compelling authority [17] to the contrary, I am of the view that in criminal cases objections to the admissibility of evidence should not be passed upon in advance of trial [18].

The defendants' motion accordingly is denied.

15. Goldstein v. United States, 1942, 316 U.S. 114, 115, 62 S.Ct. 1000, 86 L.Ed. 1312; Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; United States v. Stephenson, D.C.D.C., 1954, 121 F.Supp. 274; United States v. Weinberg, D.C.D.C., 1952, 108 F.Supp. 567; United States v. Flynn, D.C.S.D. N.Y., 1951, 103 F.Supp. 925; United States v. Coplon, D.C.S.D.N.Y., 1950, 88 F.Supp. 921; United States v. Lewis, D.C., 1950, 87 F.Supp. 970.

16. E. g. Rule 41(e), Federal Rules of Criminal Procedure.

17. E. g. Nardone v. United States, note 14, supra; In re Fried, note 5, supra.

18. Cf. United States v. Lewis, note 15, supra; United States v. Leiser, D.C. Mass., 1954, 16 F.R.D. 199.